IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Selena Sumter, ) | C/A No. 3:14-4460-CMC-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| ) | |
| Jenny Craig, Inc., Tamara Draut, ) | |
| Krystian Ellisor, and Josephine Lenartz, ) | |
| ) | |
| Defendants. ) | |
| ) | |

In this employment discrimination case, Selena Sumter ("Plaintiff") is suing her former employer Jenny Craig, Inc. ("Jenny Craig"), and its employees Tamara Draut, Krystian Ellisor, and Josephine Lenartz ("Individual Defendants") (collectively "Defendants"). Plaintiff alleges a claim of civil conspiracy against Individual Defendants and the following claims against Jenny Craig: (1) race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.* ("Title VII"); (2) age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, *et seq.* ("ADEA"); and (3) defamation. This matter comes before the court on Defendants' motion for summary judgment. [ECF No. 22]. This matter having been fully briefed [ECF Nos. 24, 25], it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civ. Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that

follow, the undersigned recommends the district court grant Defendants' motion for summary judgment.

I.     Factual Background

Plaintiff is a black female who was over the age of 40 when she began working for Jenny Craig as Centre Director at its Forest Drive location in Columbia, South Carolina. Shortly after she was hired in May 2012, Plaintiff began reporting to Draut, a white female.[1] Plaintiff's responsibilities included attending meetings related to customer relations and planning for Jenny Craig. Draut sometimes inquired as to Plaintiff's age, but Plaintiff refused to respond because the questions made her uncomfortable. Pl. Aff. at ¶6.[2] During a meeting on December 14, 2012, Plaintiff was offended when Draut made a comment that Jenny Craig's customer target was white women over 40 and 50 because Plaintiff felt singled out as a black, older woman. *Id*. at ¶7. Plaintiff informed colleagues Tondala Sparks and Melissa Parks about the incident. *Id.* Plaintiff describes Parks as a "support employee that travelled from Lenartz's[3] Centre to the Forest Drive Columbia location," but there is no indication that either Parks or Sparks were Plaintiff's superiors. *Id*. at ¶8.

Plaintiff alleges that on January 17, 2013, Parks informed her that Draut and Lenartz were planning to "get rid of" her. *Id*. at ¶9. Parks further informed Plaintiff that Draut told Lenartz that to fire Plaintiff, they would need to issue written reprimands, and

---

[1] Although Plaintiff alleges Draut and Ellisor are younger, there is no information in the record as to their ages.
[2] Plaintiff's affidavit may be found at ECF No. 24-1.
[3] Lenartz was Centre Director for another Jenny Craig location. [ECF No. 1-1 at ¶6].

2

could then hire Ellisor, a younger white manager. *Id*. Plaintiff alleges she addressed the issue with Draut via email on January 18, 2013. *Id*. at ¶10.

Around this time, Plaintiff issued a written reprimand to an employee named Hila Horowitz, who Plaintiff characterizes as a difficult employee. *Id*. at ¶13. Plaintiff complained to Draut about Horowitz and requested she be transferred to another location, but her request was denied. *Id*. Plaintiff learned that after she complained to Draut about Horowitz, Draut began investigating Plaintiff, including questioning Plaintiff's subordinates on or around February 25, 2013. *Id*. at ¶14. Plaintiff alleges she was excluded from the investigation, but was issued a written reprimand on February 27, 2013. *Id*. at ¶15. Neither Plaintiff nor Defendants provide more specific information about the reprimand. Horowitz was eventually transferred, and Plaintiff hired Sharetha Ogbuewu in March 2013. *Id*. at 16.

On April 21, 2013, Ogbuewu emailed Draut complaining that Plaintiff mistreated and psychologically abused her. [ECF No. 22-3]. The email also recounted a specific incident:

> On Friday April 19th, [Plaintiff] became very belligerent and stood over me, This made me very uncomfortable and nervous. This was all done in a very demeaning manner as she stated that I would not be able to leave the center at closing time because she had more work for me to do and then [Plaintiff] told me to pull a phone order for one of her clients and to finish restocking and dismantling boxes in the freezer room, as I entered into the freezer room, I noticed [Plaintiff] was walking behind me, then she began to tell me the way she wanted it down and which items she wanted restocked, as she spoke she slammed the freezer door, she walked pass me and shoved me to the cart, and in a stern voice she grabbed me by the arm and said excuse me but I want you to look at what I am showing you.

3

[ECF No. 22-3] (errors in original). On April 22, 2013, Draut received an email from Angie Murray, the only employee other than Ogbuewu who Plaintiff supervised. [ECF No. 22-4]. Murray's email stated that Plaintiff was demeaning and had trouble communicating to employees and clients. *Id*.

On April 23, 2013, Plaintiff was informed by Human Resources ("HR") that Draut had forwarded a complaint from Ogbuewu claiming that Plaintiff had hit her. Pl. Aff. at ¶17. The HR representative told Plaintiff that Ogbuewu had not yet been contacted by HR. *Id*. During the conversation, Plaintiff requested a full investigation and informed HR that she "could no longer endure the pervasive negative treatment" by Draut. *Id*. at ¶18.

On April 24, 2013, Plaintiff emailed Draut informing her that she was resigning "due to being constantly stressed out and treated unfairly by [Draut]." [ECF No. 22-5]. Plaintiff states that she also informed HR on April 24 that she felt she had no choice but to resign or be terminated. Pl. Aff. at ¶21.

II.   Discussion

   A.   Summary Judgment Standard

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of

materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

B.    Analysis

1.    Title VII and ADEA Claims[4]

The Fourth Circuit Court of Appeals explained in the wake of *Desert Palace, Inc. v. Costa,* 539 U.S. 90 (2003), that a Title VII plaintiff may "avert summary judgment ... through two avenues of proof." *Hill v. Lockheed Martin Logistics Mgmt., Inc.,* 354 F.3d 277, 284 (4th Cir. 2004). First, a plaintiff may survive a motion for summary judgment "by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor . . . motivated the employer's adverse

---

[4] In her complaint, Plaintiff uses the term "constructive discharge" to describe her separation from employment with Jenny Craig. However, she does not appear to be alleging a claim for constructive discharge, as she does not allege her resignation/termination constituted an adverse employment action. *See* ECF Nos. 12, 24.

5

employment decision." *Diamond v. Colonial Life & Acc. Ins. Co.,* 416 F.3d 310, 318 (4th Cir. 2005). The Fourth Circuit defines "direct evidence" as evidence that the employer "announced, admitted, or otherwise indicated that [the forbidden consideration] was a determining factor . . . ." *Cline v. Roadway Express, Inc.,* 689 F.2d 481, 485 (4th Cir. 1982) (citing *Spagnuolo v. Whirlpool Corp.,* 641 F.2d 1109, 1113 (4th Cir. 1981)). In other words, direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Fuller v. Phipps,* 67 F.3d 1137, 1142 (4th Cir. 1995), *abrogated on other grounds by Desert Palace,* 539 U.S. 90. Circumstantial evidence may "includ[e] but [is] not limited to proof of the claimant's general qualifications, from which the inference of . . . discrimination may rationally be drawn independently of any presumption [of discrimination]." *Cline,* 689 F.2d at 485 (footnote omitted). To demonstrate an unlawful employment practice in these so-called mixed-motive cases, a plaintiff "need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence," that the impermissible factor was a motivating factor, i.e., "direct evidence of discrimination is not required in mixed-motive cases." *Desert Palace,* 539 U.S. at 101–02.

Alternatively, a plaintiff may proceed under the *McDonnell Douglas* "pretext" framework. *Id.* (quoting *Hill,* 354 F.3d at 285). Under this framework, an employee must first prove a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). If the plaintiff succeeds, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action.

6

*Id.* By providing such an explanation, the employer rebuts the presumption of discrimination created by the prima facie case, and "[t]he presumption, having fulfilled its role of forcing the [employer] to come forward with some response, simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11 (1993) (citing *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 255 (1981)). If the employer articulates a legitimate, nondiscriminatory reason, the burden shifts back to the employee to show that the articulated reason was actually a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804.

The Fourth Circuit Court of Appeals has emphasized that, "[r]egardless of the type of evidence offered by a plaintiff as support for her discrimination claim (direct, circumstantial, or evidence of pretext), or whether she proceeds under a mixed-motive or single-motive theory, '[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.'" *Hill,* 354 F.3d at 286 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 153 (2000)). Further, the court stated:

> To demonstrate such an intent to discriminate on the part of the employer, an individual alleging disparate treatment based upon a protected trait must produce sufficient evidence upon which one could find that "the protected trait ... actually motivated the employer's decision." *Reeves,* 530 U.S. at 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (internal quotation marks omitted). The protected trait "must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." *Id.* (internal quotation marks and alterations omitted); *cf. Price Waterhouse [v. Hopkins* ], 490 U.S. [228,] 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (O'Connor, J., concurring) (noting that "statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself [do not] suffice to satisfy the plaintiff's burden" of proving discrimination); *Koski v. Standex Int'l Corp.,* 307 F.3d 672, 678

7

> (7th Cir.2002) (noting that the pertinent inquiry is whether the decision maker, as opposed to other managers or subordinates, evaluated the aggrieved employee based upon discriminatory criteria).

*Id.* Thus, whether a plaintiff proceeds under the first or second avenue of proof, the plaintiff's ultimate burden is to demonstrate the employer's adverse employment action was motivated, at least in part, by discrimination.

However, the ADEA does not allow a mixed-motive method of proof and instead requires Plaintiff prove that age was the "but-for" cause of an adverse employment action. *Gross v. FBL Fin. Services, Inc.*, 557 U.S. 167, 175 (2009). Therefore, the age discrimination analysis is included only in section b, below.

        a.      Mixed Motive Case[5]

To prove discrimination using the mixed motive method, "a plaintiff need only present sufficient evidence," direct or circumstantial, "for a reasonable jury to conclude, by a preponderance of the evidence, that race, color, religion, sex, or national origin was a motivating factor for any employment practice." *Desert Palace*, 539 U.S. at 101–02 (internal quotation marks omitted). Plaintiff argues that she can present a "convincing mosaic" of evidence of discrimination using the following facts: (1) she informed Parks that she felt discriminated against because of Draut's comments about Jenny Craig's target customer being white women in their 40s and 50s; (2) Plaintiff heard rumors that Draut and Lenartz sought to replace her with Ellisor; (3) HR did not contact Ogbuewu to investigate her claims against Plaintiff; and (4) Plaintiff was replaced with Ellisor, who

---

[5] Plaintiff refers to this as the "direct method of proof" [ECF No. 24 at 9], but as explained above, courts do not require direct evidence when using the mixed motive analysis.

8

Ogbuewu complained about at least seven times. [ECF No. 24 at 10]. For the following reasons, the undersigned finds that Plaintiff has failed to meet her burden to show race discrimination motivated any adverse employment action.

Plaintiff emphasizes that she raised concerns that Draut's comments made her feel she was being discriminated against because she was black. *Id*. at 10. However, there is no evidence in the record that Plaintiff informed anyone besides Sparks and Parks about this perceived discrimination, or that Sparks and Parks informed anyone about Plaintiff's concerns. Further, there is no evidence in the record that Sparks or Parks were Plaintiff's superiors. Therefore, though she may have "raised concerns" in private conversations, there is no evidence that any of Defendants were aware of Plaintiff's concerns.

Plaintiff also testified that she heard rumors that Draut and Lenartz wanted to replace her with Ellisor, who was white. First, these rumors are not supported by admissible evidence. Second, even if Draut and Lenartz wanted to replace Plaintiff with Ellisor, the record is devoid of evidence that they were racially motivated. Pure speculation and vague allegations of racist treatment are insufficient, standing alone, to show racial animus. *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) (holding that a party opposing summary judgment "cannot create a general issue of fact through mere speculation or by the building of one inference upon another."); *Gairola v. Va. Dep't of Gen. Services,* 753 F.2d 1281, 1288, n. 4 (4th Cir. 1985) (finding that a case should be dismissed "when the only evidence in support of the plaintiff's . . . case is based on unfounded conjecture").

9

Plaintiff argues that HR's failure to contact Ogbuewu as part of its investigation into her complaint supports her claim of race discrimination. A review of the timeline reveals that Ogbuewu sent her email to Draut close to midnight on April 21, 2013. [ECF No. 22-3]. Draut forwarded the matter to HR on April 22, 2013. *Id*. Plaintiff was contacted by HR on April 23, 2013. Pl. Aff. at ¶17. Plaintiff resigned on April 24, 2013. [ECF No. 22-5]. Because Plaintiff resigned prior to Defendants having an opportunity to contact Ogbuewu to investigate the claim, the investigation became moot. Defendants' failure to contact Ogbuewu prior to Plaintiff's resignation the following day does not give rise to an inference of race discrimination.

Finally, Plaintiff argues that Ellisor replaced her, whom Ogbuewu testified that she made complaints about seven or more times. None of Ogbuewu's complaints about Ellisor are in the record, and there is no indication that they are comparable in seriousness to Ogbuewu's complaint that Plaintiff shoved her into the cart and grabbed her by the arm. Therefore, Plaintiff has not presented a "convincing mosaic" of racial discrimination. The court next evaluates Plaintiff's discrimination claim using the pretext framework.

        b.      Prima Facie Case for Race and Age Discrimination

To establish a Title VII or ADEA discrimination claim using a pretext framework, Plaintiff must prove a prima facie case. The elements of a prima facie case of discrimination based upon disparate treatment are: (1) membership in a protected class; (2) adverse employment action; (3) satisfactory job performance; and (4) different treatment from similarly-situated employees outside of the protected class. *See Coleman*

10

*v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)).

Plaintiff first claims that her written reprimand in February 2013 constitutes an adverse employment action. Assuming that a written reprimand constitutes an adverse employment action, Plaintiff has not set forth any evidence that she was treated differently from similarly-situated employees outside of her protected class. Plaintiff's claims about the written reprimand are scant, at best. Plaintiff alleges only that after she complained about Horowitz, Draut investigated Plaintiff and the investigation resulted in Draut's issuing Plaintiff a written reprimand. Pl. Aff. at ¶¶4–5. Plaintiff provides no facts as to the reason for the written reprimand and does not provide a copy of the reprimand. Plaintiff also fails to name a comparator outside of her protected class who engaged in similar conduct and did not receive a written reprimand. Therefore, Plaintiff has not made a prima facie case of race or age discrimination related to the written reprimand.

Plaintiff also alleges that Jenny Craig's investigation of Ogbuewu's complaint that Plaintiff shoved her into a cart and grabbed her arm constitutes an adverse employment action. Assuming that an initiation of an investigation after a complaint constitutes an adverse employment action, Plaintiff has not shown that she was treated differently than another similarly-situated employee.

Valid comparators are individuals outside the protected class who were similarly-situated to Plaintiff in all materially-relevant respects and who were treated more favorably under apparently similar circumstances. *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 188 (4th Cir. 2004) (citing *Bryant v. Hell Atlantic Maryland, Inc.*, 288 F.3d

124, 133 (4th Cir. 2002)); *see also Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (stating that "plaintiffs are required to show that they are similar in all relevant respects to their comparator"). To establish a comparator, Plaintiff must:

> show that [she is] similar in all relevant respects to [her] comparator. Such a showing would include evidence that the employees dealt with the same supervisor, were subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Haywood*, 387 F. App'x at 359 (argued but unpublished) (internal quotation marks and citations omitted).

Plaintiff argues that Ellisor is a valid comparator and was not investigated despite Ogbuewu's affidavit testimony that she complained about Ellisor at least seven times. First, Plaintiff has provided the court with no evidence that Jenny Craig failed to investigate Ogbuewu's complaints. Although Ogbuewu states that she was not contacted by HR about her complaints, she was not contacted regarding her complaint about Plaintiff, either. Additionally, Plaintiff has provided no information as to the nature of Ogbuewu's complaints about Ellisor. There is no indication that the complaints about Ellisor were of the same nature and gravity as Ogbuewu's complaint that Plaintiff stood over her in a way that made her "uncomfortable and nervous" before shoving her into a cart and grabbing her arm. Therefore, Plaintiff has not shown that she was treated differently than a similarly-situated employee outside of her protected class.

For the foregoing reasons, Plaintiff has not stated a claim of race or age discrimination under any analysis, and the undersigned recommends Jenny Craig be granted summary judgment on these claims.

12

2. Defamation

To recover for defamation under South Carolina law, the complaining party must show: (1) a false and defamatory statement was made; (2) the unprivileged statement was published to a third party; (3) the publisher was at fault; and (4) either the statement was actionable irrespective of harm or the publication of the statement caused special harm. *Fleming v. Rose*, 567 S.E.2d 857, 860 (S.C. 2002). Defamatory communications can take two forms: libel and slander. Slander is a spoken defamation, while libel is a written defamation or one accomplished by actions or conduct. *Swinton Creek Nursery v. Edisto Farm Credit*, 514 S.E.2d 126, 133–34 (S.C. 1999).

To show a defamatory statement was made, Plaintiff cites to her own affidavit testimony that two former Jenny Craig colleagues told Plaintiff that "they were informed by Jenny Craig employees that [Plaintiff] threw a chair at Ogbuewu and was fired for that reason." Pl. Aff. at ¶22. She also cites to the following statements in Ogbuewu's affidavit:

- "After Sumter left, Lindsey Schmitt ("Schmitt") (my white colleague) informed me that Ellisor informed her that Sumter slapped me and that is why she was terminated." Ogbuewu Aff. at ¶10.

- "Also I learned that Ellisor told Schmitt and another colleague named Megan that Sumter got fired because (1) she slapped me, (2) Sumter did not know what she was doing as Centre Director, and (3) she could not do her job without Ellisor's assistance." Ogbuewu Aff. at ¶11.

Such testimony is inadmissible hearsay that is insufficient to survive summary judgment. *Greensboro Prof'l Fire Fighters Ass'n v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995) ("[E]vidence [that] consists of inadmissible hearsay . . . is neither admissible at

trial nor supportive of an opposition to a motion for summary judgment."); *see also* Fed. R. Civ. P. 56(c)(2). Plaintiff has not alleged any other defamatory statement as a basis for her claim of defamation.[6] Therefore, the undersigned recommends Jenny Craig be granted summary judgment as to Plaintiff's defamation claim.

### 3.     Civil Conspiracy

Plaintiff asserts a claim of civil conspiracy against Individual Defendants. "A civil conspiracy is a combination of two or more persons joining for the purpose of injuring and causing special damage to the plaintiff." *McMillan v. Oconee Mem'l Hosp., Inc.*, 626 S.E.2d 884, 886 (S.C. 2006). "A claim for civil conspiracy must allege additional acts in furtherance of a conspiracy rather than reallege other claims within the complaint." *Hackworth v. Greywood at Hammett, LLC*, 682 S.E.2d 871, 874 (S.C. App. 2009). In other words, the acts pled in furtherance of the conspiracy must be "separate and independent from other wrongful acts alleged in the complaint, and the failure to properly plead such acts will merit the dismissal of the claim." *Id*. at 875. "Moreover, because the quiddity of a civil conspiracy claim is the special damage resulting to the plaintiff, the damages alleged must go beyond the damages alleged in other causes of action." *Id.* at 874. "Special damages are those elements of damages that are the natural, but not the

---

[6] The undersigned notes that, although Plaintiff does not cite to it as proof of an alleged defamatory statement, she submitted an affidavit from Sparks that states "During my employment with Jenny Craig, Inc., I received a phone call from Centre Director Josey Lenartz who told me that Selena Sumter was terminated from her employment with Jenny Craig, Inc. because Selena struck another employee." Sparks Aff. at ¶9 [ECF No. 24-3]. The undersigned notes that Ogbuewu's allegation in her email that Plaintiff shoved her shoved her into a cart could be construed as Plaintiff having struck Ogbuewu, but that Plaintiff was not discharged by Jenny Craig. She voluntarily resigned and does not allege a claim of constructive discharge.

14

necessary or usual, consequence of the defendant's conduct." *Id.* "If a plaintiff merely repeats the damages from another claim instead of specifically listing special damages as part of their civil conspiracy claim, their conspiracy claim should be dismissed." *Id.*

Individual Defendants argue that Plaintiff has failed to identify concrete acts independent of any other alleged wrongdoing. In response, Plaintiff cites her own testimony to show she was told by Sparks that Individual Defendants allegedly planned to "get rid of" her by issuing written reprimands to her. However, Plaintiff provides no proof beyond her own affidavit testimony of inadmissible hearsay. Though she testified she received a written reprimand after she heard rumors of Individual Defendants' alleged conspiracy, she provides no further information as to the basis of the reprimand.

Finally, Plaintiff has not shown special damages as required for a civil conspiracy claim. While Plaintiff claims she has been maliciously "blacklisted," she has not shown evidence of such blacklisting. The Fourth Circuit has held that to effectuate recovery under a theory that Plaintiff has been blacklisted, "the plaintiff must prove that there was a blacklist, a combination of employers who exchanged the information contained on the blacklist, and a willful or malicious use of the blacklist by one or more of the members of the combination, with resultant injury to the plaintiff." *Austin v. Torrington Co.*, 810 F.2d 416, 421 (4th Cir. 1987). Plaintiff has not shown how she has suffered loss to her reputation or has otherwise been "blacklisted." Plaintiff also argues that the costs of prosecuting an action is a cognizable special damage under South Carolina law, citing *Benedict College v. Nat'l Credit Sys., Inc.*, 735 S.E.2d 518, 523 (S.C. 2012). A review of *Benedict College* reveals that it is distinguishable from the instant case in that the civil

15

conspiracy claim was brought as a counterclaim by Defendant and was distinct from Defendant's other claim for breach of contract. *Id*. Here, Plaintiff has not spent costs defending a claim, and the costs of prosecuting her civil conspiracy claim are not distinct from her prosecution of her other claims. Finally, although Plaintiff claims she sought counseling and suffered physical impairment, pain and suffering, and emotional distress related to her civil conspiracy claim [ECF No. 1-1 at ¶44], she also claims she suffered humiliation, emotional distress, and pain and suffering in her defamation claim [*id*. at ¶39]. Therefore, Plaintiff has not set forth evidence of special damages distinct from her defamation claim.

The undersigned recommends Individual Defendants be granted summary judgment, because no reasonable juror could find in Plaintiff's favor on her civil conspiracy claim.

III.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendants' motion for summary judgment [ECF No. 22] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

March 23, 2016                                            Shiva V. Hodges
Columbia, South Carolina                          United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

16

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).